| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Tyneia G. Merritt, Esq. (SBN 235750)**<br>**MERRITT LAW, INC., APLC**<br>**3200 E. Guasti Road, Suite 100**<br>**Ontario, CA 91761**<br>**Tel: 909-476-0651**<br>**Fax: 909-303-9013**<br>**Email: tye@mlawinc.com** | |
| ☐ *Movant appearing without an attorney*<br>☑ *Attorney for Movant* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>**Stefan Mark Higa and Emy Okohira *fka* Emy Okohira-Higa**<br><br><br>Debtor(s). | CASE NO.: **2:16-bk-10155-WB**<br>CHAPTER: **13** |
|---|---|
| | **NOTICE OF MOTION AND MOTION**<br>**FOR RELIEF FROM THE AUTOMATIC STAY**<br>**UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(REAL PROPERTY)** |
| | DATE: **May 22, 2018**<br>TIME: **10:00 a.m.**<br>COURTROOM: **1375** |

| **Movant:   E*Trade Bank** |
|---|

1. **Hearing Location:**

   ☑ 255 East Temple Street, Los Angeles, CA 90012     ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

NtcMfr_CAC_X02                                      4125-N-4838
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                        Page 1                      **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☑  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (*if any*).

   c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  04/30/2018

Merritt Law, Inc., APLC
Printed name of law firm (*if applicable*)

Tyneia G. Merritt, Esq.
Printed name of individual Movant or attorney for Movant

*/s/ Tyneia G. Merritt*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 2                          **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☑ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☑ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. **SEE CONTINUATION PAGE FOR STATEMENT.**

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*:  **5129 Lindblade Drive**
   *Unit/suite number*:
   *City, state, zip code*:  **Culver City, California 90230**

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit **2**): **04 1980488 in Los Angeles County**

3. **Bankruptcy Case History:**

   a. A ☑ voluntary ☐ involuntary bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 was filed on (*date*): **1/6/2016**.

   b. ☐ An order to convert case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☑ A plan, if any, was confirmed on (*date*) **3/25/2016**.

4. **Grounds for Relief from Stay:**

   a. ☑ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☑ Movant's interest in the Property is not adequately protected.

       (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*)

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:                (Short Title) | Chapter: 13 |
|---|---|
| **Stefan Mark Higa and Emy Okohira *fka* Emy Okohira-Higa**<br>                    Debtor(s). | Case No.     **2:16-bk-10155-WB** |

# CONTINUATION PAGE

## (MOVANT: E*Trade Bank)

ATTACHMENT 1.

1. STANDING STATEMENT:

Specialized Loan Servicing LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

Continuation Page 3 - to Motion for Relief from the Automatic Stay as to Real Property

(3) ☑ (*Chapter 12 or 13 cases only*)

(A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

(B) ☑ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☑ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit **3**.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

MtnMfr_CAC_R02                                                                                                                    4125-N-4838

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                                    Page 4                                                    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☑ 11 U.S.C. § 362(d)(1) ☐ 11 U.S.C. § 362(d)(2) ☐ 11 U.S.C. § 362(d)(3).

2. ☑ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☑ Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☑ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☑ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☑ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 04/30/2018

**Merritt Law, Inc., APLC**
Printed name of law firm (*if applicable*)

**Tyneia G. Merritt**
Printed name of individual Movant or attorney for Movant

*/s/ Tyneia G. Merritt*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## REAL PROPERTY DECLARATION

I, (print name of Declarant) _____ Ami McKernan _____, declare:

1. I have personal knowledge of the matters set form in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    a.  □  I am the Movant.

    b.  □  I am employed by Movant as (state title and capacity):

    c.  ☑  Other (specify): I am a(n) _____ Second Assistant Vice President _____ **employed by Specialized Loan Servicing LLC ("SLS"), and am authorized to sign this Declaration on behalf of SLS, as servicer for Movant: E*Trade Bank.**

2.  a.  □  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☑  Other (see attached):

3. The Movant is:

    a.  ☑  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1.

    b.  ☑  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2

    c.  □  Servicing agent authorized to act on behalf of the:

        □  Holder.

        □  Beneficiary.

    d.  □  Other (specify):

4.  a.  The address of the Property is:

    Street address:       **5129 Lindblade Drive**
    Unit/suite no.:
    City, state, zip code:  **Culver City, California 90230**

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is: **04 1980488 in Los Angeles County**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☑ Debtor's principal residence      b. ☐ Other residence

   c. ☐ Multi-unit residential      d. ☐ Commercial

   e. ☐ Industrial      f. ☐ Vacant land

   g. ☐ Other (*specify*):

6. The nature of Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☑ Co-owner(s) (*specify*): **Stefan Higa and Emy Okohira**

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☑ Debtor ☑ did ☐ did not list the Property in the Debtor's schedules.

   f. ☑ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☑ trust deed.

        The deed was recorded on (*date*) **8/2/2004**.

7. Movant holds a ☑ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☑ A true and correct copy of the document as recorded is attached as Exhibit **2**.

   b. ☑ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
   attached as Exhibit **1**.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
   trust to Movant is attached as Exhibit __.

8. Amount of Movant's claim with respect to the Property:

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| a. Principal (including any deferred): | | | $ 48,744.83 |
| b. Accrued interest: | | | $ 5,228.00 |
| c. Late charges: | | | $ 0.00 |
| d. Costs (attorney's fees, foreclosure fees, other costs): | | | $ 102.15 |
| e. Advances (property taxes, insurance): | | | $ 0.00 |
| f. Less suspense account or partial balance paid: | | | $ (983.81) |
| g. TOTAL CLAIM as of (*date*): **4/19/2018** | | | $ 53,091.17 |

   h. ☐ Loan is all due and payable because it matured on (*date*)

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*).

   a. Notice of default recorded on (*date*) _____ or ☑ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☑ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☑ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☑ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☑ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☑ none recorded.

DecMtr_CAC_R02      4125-N-4838

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017      Page 7      **F 4001-1.RFS.RP.MOTION**

| In re: | (Short Title) | Chapter: 13 |
|---|---|---|
| | Stefan Mark Higa and Emy Okohira *fka* Emy Okohira-Higa | Case No.    2:16-bk-10155-WB |
| | Debtor(s). | |

## CONTINUATION PAGE

## (MOVANT: E*Trade Bank)

## (Attachment 2.b. Page 6)

2. b. Other (see attached): In my capacity as an employee of Specialized Loan Servicing LLC, servicer for Movant, I am authorized to execute this declaration on behalf of Movant. I have personal knowledge of, and am familiar with the books, records and files of Specialized Loan Servicing LLC, as servicer for Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally reviewed and worked on the books, records and files of Specialized Loan Servicing LLC, as servicer for Movant, and as to the following facts, I have gained knowledge of them from the business records of Specialized Loan Servicing LLC kept and maintained on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and are maintained in the ordinary course of Specialized Loan Servicing LLC's business at or near the time of the actions, conditions or events to which they relate. Any such document or record was prepared in the ordinary court of business of Specialized Loan Servicing LLC by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

10. Attached (*optional*) as Exhibit **4** is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*Chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____, _____.

    b. Number of payments that have become due and were not made: _____. Total amount: $_____

    c. Future payments due by time of anticipated hearing date (*if applicable*): _____
    An additional payment of $_____ will come due on (*date*) _____, and on the ___ day of each month thereafter. If the payment is not received within ___ days of said due date, a late charge of $ _____ will be charged to the loan.

    d. The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit ___.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit ___.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit ___.

        (4) ☐ Other (*specify*):

    e. **Calculation of equity/equity cushion in property:**
    Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit ___ and consist of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (specify):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
    I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is ___% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
    By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $_____ (estimated based upon ___% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☑ (Chapter 12 and 13 cases only) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (or concluded on) the following date: **2/16/2016**.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: **3/23/2016**.
A plan was confirmed on the following date (if applicable): **3/25/2016**.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ___.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 1 | | $994.64 | $994.64 |
| 1 | | $1,000.27 | $1,000.27 |
| 1 | | $1,011.32 | $1,011.32 |
| 1 | | $988.41 | $988.41 |
| 1 | | $1,005.43 | $1,005.43 |
| 1 | | $1,009.99 | $1,009.99 |
| 1 | | $1,011.61 | $1,011.61 |
| 1 | | $1,009.99 | $1,009.99 |
| 7 | | $1,011.61 | $7,081.27 |
| 1 | | $1,010.76 | $1,010.76 |
| 1 | | $1,011.61 | $1,011.61 |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:          $_____ **0.00**
(For details of type and amount, see Exhibit ___)

e. Attorneys' fees and costs:          $_____ **0.00**
(For details of type and amount, see Exhibit ___)

f. Less suspense account of partial paid balance:          $_____ **(69.62)**

TOTAL POSTPETITION DELINQUENCY:          $_____ **17,065.68**

g. Future payments due by time of anticipated hearing date (if applicable): **1**.
An additional payment of **$1,009.99** will come due on (date) **5/15/2018** and on the **15th** day of each month thereafter. If the payment is not received by the **N/A** day of the month, a late charge of **N/A** will be charged to the loan.

h. Amount and date of the last 3 post-petition payments received from the Debtor in good funds, regardless of how applied (if applicable):

| $ 2,032.70 | received on (date) | 1/26/2017 |
| $ 1,013.94 | received on (date) | 10/10/2016 |

DocMfr_CAC_R02                                                                                                    4125-N-4838

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                             Page 10                                      F 4001-1.RFS.RP.MOTION

**$ 1,021.42**          received on (*date*)   **9/9/2016**

i.  ☐  The entire claim is provided for in the Chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit ___. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F4001-1.DEC.AGENT.TRUSTEE*).

13. ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit ___.

16. ☐  Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

   a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c.  ☐  The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d.  ☐  Other (*specify*):

18. ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.  ☐  Multiple bankruptcy cases affecting the Property include:

   1.  Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____                    Date discharged: _____   Date filed: _____

       Relief from stay regarding the Property ☐ was ☐ was not granted.

   2.  Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____                    Date discharged: _____   Date filed: _____

       Relief from stay regarding the Property ☐ was ☐ was not granted.

   3.  Case name: _____
       Chapter: _____   Case number: _____
       Date dismissed: _____                    Date discharged: _____   Date filed: _____

       Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

DecMlr_CAC_R02-                                                                                                         4125-N-4838
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                              Page 10                                    F 4001-1.RFS.RP.MOTION

19. ☐   Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a.   ☐   These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b.   ☐   Although Movant knew the bankruptcy case was filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

   c.   ☐   For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**APR 2 5 2018**
_____     _____Ami McKernan_____     _____
Date                                  Printed Name                         Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 1

E*TRADEBANK

# HOME EQUITY LINE OF CREDIT AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $100,000.00 | 05-15-2004 | 04-15-2021 | [redacted] | | | [redacted] | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** STEFAN HIGA
AMY OKOHIRA
5129 LINDBLADE DRIVE
CULVER CITY, CA 90230

**Lender:** E*TRADE Bank
Consumer Lending Headquarters
671 North Glebe Road
Arlington, VA 22203

**CREDIT LIMIT: $100,000.00** **DATE OF AGREEMENT: May 15, 2004**

**Introduction.** This Home Equity Line of Credit Agreement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through E*TRADE Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean E*TRADE Bank. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay E*TRADE Bank, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until April 15, 2021 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the Commonwealth of Virginia, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: The draw period will end on the last day of the monthly billing cycle in which the seventh anniversary of the opening of this account occurs. You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin andyou will no longer be able to obtain credit advances. The length of the repayment period is as follows: The repayment period will begin with the first billing cycle following the the Draw Period and will continue until you pay in full all amounts owing under this Agreement ("Repayment Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Initially, during the Draw Period, your "Regular Payment" will equal the greater of (1) the sum of your accrued **FINANCE CHARGES**, credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle; or (2) $25.00 ("First Payment Stream"). You will make up to 84 of these payments. Your payments will be due monthly.

Thereafter, during the Repayment Period and until the account is paid in full, your "Regular Payment" will equal the greater of (1) the sum of your accrued **FINANCE CHARGES**, credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle, plus 1/120th of the principal balance at the end of the first billing cycle in the Repayment Period; or (2) $25.00 ("Second Payment Stream"). Your payments will be due monthly.

Your "Minimum Payment" will be the Regular Payment, plus any amounts past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment.

You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. If you have selected to have the payment automatically deducted from your checking account, this will occur on or before the payment due date each month.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to (1) all billed finance charges; (2) late charges, if any; (3) recurring fees, if any; (4) principal and; (5) other expenses, if any.

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 3:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to two (2) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Credit Line Check" that we will supply to you.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Credit Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Credit Line Check.

**Post-dated Checks.** Your Credit Line Check is post-dated. If a post-dated Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Credit Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Credit Line Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line Check.

**Other Restriction. Less Than Minimum.** Your credit line check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requireemnt or would be if we paid the check.

If we pay any Credit Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Check. The Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, your use of each Credit Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" Credit Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Credit Line Check Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Credit Line Checks.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Credit Line Check must be written for at least the minimum advance amount.

**Authorized Signers.** The words "Authorized Signer" on Credit Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Credit Line Checks.** If you lose your Credit Line Checks or if someone is using them without your permission, you agree to let us know immediately. You can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Agreement: a Deed of Trust dated May 15, 2004, to a trustee in favor of us on real property located in LOS ANGELES County, State of California. The Real Property or its address is commonly known as 5129 LINDBLADE DRIVE, CULVER CITY, CA 90230-0000.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account, including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, **FINANCE CHARGES**, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic **FINANCE CHARGES** for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily **FINANCE CHARGE** will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "Average Daily Balance" (including current transactions) in this account during the billing cycle. To get the Average Daily Balance we take the beginning balance of your Credit Line Account each day and add any new advances posted that day; and subtract any payments, credits, Late Charges, Annual Fees, other charges and unpaid Finance Charges. This give us a daily balance. Then we add up all the daily balances for the billing cycle and divide by the total number of days in the billing cycle. The result is the Average Daily Balance.

**Method of Determining the Amount of FINANCE CHARGE.** Any **FINANCE CHARGE** is determined by applying the "Periodic Rate" to the balance described herein. This is your **FINANCE CHARGE** calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** This Credit Line Account has tiered rates as shown below, and the rate that applies to you depends on your outstanding balance in effect from time to time. We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. Initially, we will apply the discounted rates shown herein. Thereafter, we start with an independent index which is the Prime rate as published in the Wall Street Journal. When a range of rates has been published, the higher of the rates will be used (the "Index"). For any billing cycle, we will use the Index value for the last day of the preceding calendar month which is reported. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect monthly. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be more than the lesser of 24.000% or the maximum rate allowed by applicable law. Today the Index is 4.000% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below:

### Rates During the Discount Period

| Term of Discount Range of Balances | Discounted Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| First 03 payments | | | |
| All Balances | 2.990% | 2.990% | 0.00819% |

The term of the discount period is 3 payments.

The discounted rate will be in effect through the appropriate number of billing cycles following the opening of your account.

### Current Non-discounted Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.450 % | 4.450 % | 0.01219 % |

### Current Non-discounted Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.450 % | 4.450 % | 0.01219 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $50.00 will be charged to your Credit Line at the following time: The Annual Fee will be charged to your Credit Line Account on the first day of each billing cycle immediately following each anniversary of the account during the

Draw Period. The Annual Fee will not be charged during the first year of the Draw Period.

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $25.00 when you request a stop payment on your account.

**Late Charge.** Your payment will be late if it is not received by us within **15 days after the "Payment Due Date" shown on your periodic statement.** If your payment is late we may charge you 10.000% of the payment or $25.00, whichever is greater.

**Other Charges.** Your Credit Line Account may be charged the following other charges: **Returned Line of Credit Check Fee.** We will charge you a fee for each check written on this account which is properly dishonored by us for any reason. The amount of this other charge is: $25.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** Subject to any limits under applicable law, upon default, you agree to pay our attorneys' fees and all of our other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable **ANNUAL PERCENTAGE RATE** under this Agreement to 24.000 percent per annum. The **ANNUAL PERCENTAGE RATE** will not exceed the maximum rate permitted by applicable law. If we do not increase the **ANNUAL PERCENTAGE RATE** upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, as long as the account is not closed. If you close the account within 24 months of opening it, we will charge you an early account closure penalty of $300. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: E*TRADE Bank, c/o Consumer Loan Center, 2730 Liberty Avenue Pittsburgh, PA 15222.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Jury Waiver.** We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.

**Servicing Number Contact Information.** Once your account number has been established, please contact 1-800-321-2206 with inquiries regarding your loan account.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about

HOME EQUITY LINE OF CREDIT AGREEMENT
(Continued)

your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(s) should be sent to us at the following address: E*TRADE Bank, c/o Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the Commonwealth of Virginia. The laws of the Commonwealth of Virginia will apply except to the extent that federal law applies. This Agreement has been accepted by us in the Commonwealth of Virginia.

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the applicable courts for Arlington County, Commonwealth of Virginia.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Arbitration.** You and we agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Code of Procedure of the National Arbitration Forum in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated May 15, 2004.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X_____ (Seal)     X_____ (Seal)
   STEFAN HIGA                                  AMY OKOHIRA

HOME EQUITY LINE OF CREDIT AGREEMENT
(Continued)

# BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify us in case of errors or questions about your bill.

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

E*TRADE Bank
Attention: Centralized Customer Assistance
2730 Liberty Avenue
Pittsburgh, PA  15222

or at the address listed on your bill.  Write to us as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

### Your rights and our responsibilities after we receive your written notice.

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then.  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent.  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LASER PRO Lending, Ver. 5.33.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - VA  T:\CFI\LPL\D35.FC  TR-10138412  PR-EHELOCIO

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**

04 1980488

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

11:01 AM   AUG 02 2004

## TITLE(S) :

L E A D    S H E E T

FEE                                                    D.T.T



CODE
20

CODE
19

CODE
9

NOTIFICATION SENT SA

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     Number of AIN's Shown

**THIS FORM NOT TO BE DUPLICATED**

04 1980488    2

RECORDATION REQUESTED BY:
E*TRADE Bank
Consumer Lending Headquarters
671 North Glebe Road
Arlington, VA 22203

WHEN RECORDED MAIL TO·
E*TRADE Bank
Consumer Loan Center (P5-PCLC-01-I)
2730 Liberty Avenue
Pittsburgh, PA 15222

SEND TAX NOTICES TO.
STEFAN HIGA
AMY OKOHIRA AKA AMY HIGA
5129 LINDBLADE DRIVE
CULVER CITY, CA 90230

FOR RECORDER'S USE ONLY

# E✱TRADEBANK·

## DEED OF TRUST

### Variable Interest Rate
### Revolving Line of Credit

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $100,000.00.

**THIS DEED OF TRUST** is dated May 15, 2004, among STEFAN HIGA, whose address is 5129 LINDBLADE DRIVE, CULVER CITY, CA 90230 and AMY OKOHIRA AKA AMY HIGA, whose address is 5129 LINDBLADE DRIVE, CULVER CITY, CA 90230; Husband & Wife                    ("Trustor"); E*TRADE Bank, whose address is Consumer Lending Headquarters, 671 North Glebe Road, Arlington, VA 22203 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and PNC Bank, National Association, whose address is 2730 Liberty Avenue, Pittsburgh, PA 15222 (referred to below as "Trustee").

**CONVEYANCE AND GRANT** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures, all easements, rights of way, and appurtenances, all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights), and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in LOS ANGELES County, State of California·

See Attached Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as 5129 LINDBLADE DRIVE, CULVER CITY, CA 90230-0000. The Assessor's Parcel Number for the Real Property is** ▮▮▮▮▮▮▮▮

**REVOLVING LINE OF CREDIT** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Deed of Trust secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Deed of Trust and any intermediate balance

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS**

**TRUSTOR'S REPRESENTATIONS AND WARRANTIES** Trustor warrants that (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender, (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the

3

# DEED OF TRUST
## (Continued)

Page 2

Property, (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor, (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition, and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower)

**TRUSTOR'S WAIVERS.** Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness, (b) proceed against any person, including Borrower, before proceeding against Trustor, (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor, (d) apply any payments or proceeds received against the Indebtedness in any order, (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale, (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender, or (g) pursue any remedy or course of action in Lender's power whatsoever

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person, (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness, (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender, (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise, (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness, or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property  This means among other things, (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower  (2) If Lender forecloses on any real property collateral pledged by Borrower  (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price  (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property  These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law  Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender  Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms  Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall strictly perform all their respective obligations under the Credit Agreement, this Deed of Trust, and the Related Documents

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions

　**Possession and Use** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property, (2) use, operate or manage the Property, and (3) collect the Rents from the Property

　**Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value

　**Compliance With Environmental Laws** Trustor represents and warrants to Lender that (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property, (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters, and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property, and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances  Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this

**04 1980488**

## DEED OF TRUST
## (Continued)

Page 3

4

section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements**  Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect**  Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust.

**Payment**  Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment**  Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction**  Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance**  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If

## 04 1980488

# DEED OF TRUST
## (Continued)

<div align="right">Page 4</div>

in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property  If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear

**Compliance with Existing Indebtedness**  During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement  If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness

**LENDER'S EXPENDITURES**  If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so  If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand, (B)  be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy, or  (2)  the remaining term of the Credit Agreement, or  (C)  be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity  The Property also will secure payment of these amounts  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had

**WARRANTY, DEFENSE OF TITLE**  The following provisions relating to ownership of the Property are a part of this Deed of Trust

**Title.**  Trustor warrants that  (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender

**Defense of Title.**  Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons  In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense  Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation

**Compliance With Laws**  Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities

**Survival of Promises**  All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full

**EXISTING INDEBTEDNESS.**  The following provisions concerning Existing Indebtedness are a part of this Deed of Trust

**Existing Lien**  The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien  Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness

**No Modification**  Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender  Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender

**CONDEMNATION**  The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust

**Proceedings**  If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award  Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation

**Application of Net Proceeds**  If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES**  The following provisions relating to governmental

<div align="right">**04** 1980488</div>

6

**DEED OF TRUST**
**(Continued)**
Page 5

taxes, fees and charges are a part of this Deed of Trust

**Current Taxes, Fees and Charges**  Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property  Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust

**Taxes.**  The following shall constitute taxes to which this section applies  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust,  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust,  (3)  a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement, and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower

**Subsequent Taxes**  If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1)  pays the tax before it becomes delinquent, or (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender

**SECURITY AGREEMENT, FINANCING STATEMENTS**  The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust

**Security Agreement**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time

**Security Interest**  Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property  Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest  Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property  Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law

**Addresses**  The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust

**FURTHER ASSURANCES; ATTORNEY-IN-FACT**  The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust

**Further Assurances.**  At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Borrower's and Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2)  the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor  Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph

**Attorney-In-Fact**  If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense  For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph

**FULL PERFORMANCE.**  If Borrower pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustee suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property  Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance

**EVENTS OF DEFAULT**  Trustor will be in default under this Deed of Trust if any of the following happen  (A)  Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement  This can include, for example, a false statement about Borrower's or Trustor's income, assets, liabilities, or any other aspects of Borrower's or Trustor's financial condition  (B)  Borrower does not meet the repayment terms of the Credit Agreement  (C)  Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral  This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes

**RIGHTS AND REMEDIES ON DEFAULT**  If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies

**Election of Remedies**  All of Lender's rights and remedies will be cumulative and may be exercised alone or together  An election by Lender to choose any one remedy will not bar Lender from using any other remedy  If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies

**Foreclosure by Sale**  Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record

**04 1980488**

## DEED OF TRUST
### (Continued)

Page 6

**7**

Beneficiary also shall deposit with Trustee this Deed of Trust, the Credit Agreement, other documents requested by Trustee, and all documents evidencing expenditures secured hereby  After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto

**Judicial Foreclosure**  With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law

**UCC Remedies**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law

**Collect Rents**  Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender  If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver

**Appoint Receiver**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness  The receiver may serve without bond if permitted by law  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount  Employment by Lender shall not disqualify a person from serving as a receiver

**Tenancy at Sufferance**  If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon  default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender

**Other Remedies**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or by law

**Notice of Sale**  Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made  Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property

**Sale of the Property**  To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled  In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales  Lender shall be entitled to bid at any public sale on all or any portion of the Property

**Attorneys' Fees, Expenses**  If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law  Trustor also will pay any court costs, in addition to all other sums provided by law

**Rights of Trustee**  Trustee shall have all of the rights and duties of Lender as set forth in this section

**POWERS AND OBLIGATIONS OF TRUSTEE**  The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust

**Powers of Trustee**  In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor  (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public, (b) join in granting any easement or creating any restriction on the Real Property, and  (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of

**04 1980488**

# DEED OF TRUST
## (Continued)

Page 7

Lender under this Deed of Trust

**Obligations to Notify**   Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee

**Trustee.**   Trustee shall meet all qualifications required for Trustee under applicable law   In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law

**Successor Trustee**   Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of LOS ANGELES County, State of California   The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest   The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law   This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee**   Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law

**NOTICES**   Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust   Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust   All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust   Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address   For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address   Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors   It will be Trustor's responsibility to tell the others of the notice from Lender

**STATEMENT OF OBLIGATION FEE**   Lender may collect a fee, not to exceed the maximum permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

**MISCELLANEOUS PROVISIONS**   The following miscellaneous provisions are a part of this Deed of Trust

**Amendments**   What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust   To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment

**Arbitration**   Borrower and Trustor and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Code of Procedure of the National Arbitration Forum in effect at the time the claim is filed, upon request of either party   No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement   This includes, without limitation, obtaining injunctive relief or a temporary restraining order, invoking a power of sale under any deed of trust or mortgage, obtaining a writ of attachment or imposition of a receiver, or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code   Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party.   Borrower and Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration   Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction   Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction.   The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes   The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision

**Caption Headings**   Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust

**Merger**   There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender

**Governing Law**   This Deed of Trust will be governed by and interpreted in accordance with federal law and the laws of the Commonwealth of Virginia, except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Property, which will be governed by the laws of the State of California   However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable   The loan transaction which is evidenced by the Credit Agreement and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the Commonwealth of Virginia

**04 1980488**

# DEED OF TRUST
## (Continued)

Page 8

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Arlington County, Commonwealth of Virginia

**Joint and Several Liability** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower This means that each Borrower and Trustor signing below is responsible for all obligations in this Deed of Trust

**No Waiver by Lender** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests Trustor waives presentment, demand for payment, protest, and notice of dishonor

**Severability** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable

**Successors and Assigns** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness

**Time is of the Essence** Time is of the essence in the performance of this Deed of Trust

**Waive Jury** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party

**DEFINITIONS** The following words shall have the following meanings when used in this Deed of Trust

**Beneficiary** The word "Beneficiary" means E*TRADE Bank, and its successors and assigns

**Borrower** The word "Borrower" means STEFAN HIGA and AMY OKOHIRA and includes all co-signers and co-makers signing the Credit Agreement

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated May 15, 2004, **with credit limit of $100,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement The maturity date of this Deed of Trust is April 15, 2021

**Deed of Trust** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents

**Environmental Laws** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U S C Section 9601, et seq ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub L No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U S C Section 1801, et seq , the Resource Conservation and Recovery Act, 42 U S C Section 6901, et seq , Chapters 6 5 through 7 7 of Division 20 of the California Health and Safety Code, Section 25100, et seq , or other applicable state or federal laws, rules, or regulations adopted pursuant thereto

**Event of Default** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust

**Existing Indebtedness** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust

**Hazardous Substances** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Improvements** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property

**Indebtedness** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust

**Lender** The word "Lender" means E*TRADE Bank, its successors and assigns The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement

**Personal Property** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property, and together with all proceeds (including without

**04 1980488**

**DEED OF TRUST**
**(Continued)**

Page 9

limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property

**Property**   The word "Property" means collectively the Real Property and the Personal Property

**Real Property.**   The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust

**Related Documents**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness

**Rents**   The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents

**Trustee**   The word "Trustee" means PNC Bank, National Association, whose address is 2730 Liberty Avenue, Pittsburgh, PA  15222 and any substitute or successor trustees

**Trustor**   The word "Trustor" means STEFAN HIGA and AMY  OKOHIRA AKA AMY HIGA

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE CREDIT AGREEMENT SECURED BY THIS DEED OF TRUST**

TRUSTOR

X _____
STEFAN HIGA

X _____
AMY  OKOHIRA AKA AMY HIGA

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
                                                        ) SS
COUNTY OF _Los Angeles_ )

On _06- 11 -_, 20_04_ before me, _Blanca M Vivas_
personally appeared STEFAN HIGA and AMY  OKOHIRA AKA AMY HIGA, Husband & Wife _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature _Blanca M Vivas_

(Seal)



BLANCA M VIVAS
Commission # 1370390
Notary Public - California
Los Angeles County
My Comm Expires Aug 18, 2006

**04** 1980488

# DEED OF TRUST
### (Continued)

---

**(DO NOT RECORD)**

# REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to

Date. _____          Beneficiary _____

                                            By _____

                                            Its. _____

---

LASER PRO Lending, Ver. 5.23.20.002 Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.    CA/VA T:\CFI\LPL\G01.FC TR 10138612 PR-EHELOCIO

**04  1980488**

*12*

**EXHIBIT "A"**
**(LEGAL DESCRIPTION)**

A FEE

LOT(S) 35 OF TRACT NO 26941, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 762 PAGE(S) 86
TO 89 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY

ASSESSORS' PARCEL NO 

**\* END OF INFORMATION \***

**04 1980488**

# EXHIBIT 3

**Fill in this information to identify your case and this filing:**

| | | | | |
|---|---|---|---|---|
| Debtor 1 | **Stefan Mark Higa** | | | |
| | First Name | Middle Name | Last Name | |
| Debtor 2 | **Emy Okohira** | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | | |
| Case number | **2:16-bk-10155** | | | |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

| | | | |
|---|---|---|---|
| 1.1 | | | |

**5129 Lindblade Dr.**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $870,000.00 | $870,000.00 |

**Culver City     CA     90230-0000**
City          State     ZIP Code

**Los Angeles**
County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Residence:**

1st DOT Due/Late:  1st / 16th
2nd DOT Due/Late:  1st/16th
3rd DOT: Due/Late:  1st/16th

Debtor 1    **Stefan Mark Higa**

Debtor 2    **Emy Okohira**

Case number *(if known)*    **2:16-bk-10155**

1.2    If you own or have more than one, list here:

**225 E. Appaloosa Way**

Street address, if available, or other description

**Willard**        **UT**        **84340-0000**

City        State        ZIP Code

**Box Elder**

County

**What is the property?** *Check all that apply*

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** *Check one*

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Rental Property
To be surrendered**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$201,602.00** | **$201,602.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

■ **Check if this is community property**
(see instructions)

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..................................................................=>

**$1,071,602.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

3.1    Make:    **Honda**
Model:    **Accord**
Year:    **2004**
Approximate mileage:    **120,000**
Other information:

**Paid in full**

**Who has an interest in the property?** *Check one*

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,619.00** | **$2,619.00** |

3.2    Make:    **Chevrolet**
Model:    **Suburban**
Year:    **2001**
Approximate mileage:    **110,000**
Other information:

**Paid in full**

**Who has an interest in the property?** *Check one*

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$5,975.00** | **$5,975.00** |

| Debtor 1 | Stefan Mark Higa | | |
|---|---|---|---|
| Debtor 2 | Emy Okohira | Case number *(if known)* | 2:16-bk-10155 |

| 3.3 | Make: | Toyota | | Who has an interest in the property? *Check one* | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|---|
| | Model: | Pickup | | ☐ Debtor 1 only | | |
| | Year: | 1993 | | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| | Approximate mileage: | | 160,000 | ■ Debtor 1 and Debtor 2 only | | |
| | Other information: | | | ☐ At least one of the debtors and another | | |
| | Paid in full | | | ■ Check if this is community property *(see instructions)* | $1,126.00 | $1,126.00 |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

| 5 | Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................=> | $9,720.00 |
|---|---|---|

**Part 3:**  Describe Your Personal and Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| Miscellaneous household furnishings, electronics, etc. | $1,500.00 |
|---|---|

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

| Electronics | $750.00 |
|---|---|

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No
☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
■ No
☐ Yes. Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Stefan Mark Higa | | Case number (if known) | 2:16-bk-10155 |
| Debtor 2 | Emy Okohira | | | |

| Personal clothing | $675.00 |

---

**12. Jewelry**
  *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
  ☐ No
  ■ Yes. Describe.....

| Miscellaneous jewelry | $250.00 |

---

**13. Non-farm animals**
  *Examples:* Dogs, cats, birds, horses
  ■ No
  ☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
  ■ No
  ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .................................................................**

| | $3,175.00 |

---

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**16. Cash**
  *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
  ■ No
  ☐ Yes.................................................................................................................

**17. Deposits of money**
  *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
  ☐ No
  ■ Yes.......................

Institution name:

| 17.1. | Checking and savings | Delta Community Credit Union | $11,000.00 |
| 17.2. | Checking and savings | OneWest Bank | $4,000.00 |

---

**18. Bonds, mutual funds, or publicly traded stocks**
  *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
  ☐ No
  ■ Yes...................

Institution or issuer name:

| Fidelity Brokerage Account | $4,800.00 |

---

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
  ■ No
  ☐ Yes. Give specific information about them....................
    Name of entity:                                    % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
  *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
  *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

---

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

| Debtor 1 | **Stefan Mark Higa** | | |
|---|---|---|---|
| Debtor 2 | **Emy Okohira** | Case number *(if known)* | **2:16-bk-10155** |

■ No

☐ Yes. Give specific information about them

Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No

■ Yes. List each account separately.

| | Type of account: | Institution name: | |
|---|---|---|---|
| | **401(k)** | **Fidelity** | $42,000.00 |
| | **401(k)** | **Horizons** | $90,000.00 |
| | **Defined benefit pension plan** | **LACERA** | $0.00 |
| | **IRA** | **Primerica** | $17,086.00 |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. .....................        Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes. .............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes. .............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No

☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

Debtor 1    **Stefan Mark Higa**
Debtor 2    **Emy Okohira**                                        Case number *(if known)*  **2:16-bk-10155**

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
   benefits; unpaid loans you made to someone else
   ■ No
   ☐ Yes. Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ☐ No
   ■ Yes. Name the insurance company of each policy and list its value.

   | Company name: | Beneficiary: | Surrender or refund value: |
   |---|---|---|
   | **Debtors have term life insurance with no cash value** | **Debtors and living trust** | **$0.00** |

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
   someone has died.
   ■ No
   ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ■ No
   ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
   ■ No
   ☐ Yes. Give specific information..

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
   for Part 4. Write that number here......................................................................................................... | **$168,886.00**

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37. Do you own or have any legal or equitable interest in any business-related property?
   ■ No. Go to Part 6.
   ☐ Yes. Go to line 38.

| **Part 6:** | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
| | If you own or have an interest in farmland, list it in Part 1. |

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
   ■ No. Go to Part 7.
   ☐ Yes. Go to line 47.

| **Part 7:** | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. Do you have other property of any kind you did not already list?
   *Examples:* Season tickets, country club membership
   ■ No
   ☐ Yes. Give specific information.........

54. Add the dollar value of all of your entries from Part 7. Write that number here ....................................... | **$0.00**

Debtor 1    **Stefan Mark Higa**
Debtor 2    **Emy Okohira**                                          Case number *(if known)*    **2:16-bk-10155**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55.  **Part 1: Total real estate, line 2** ........................................................................................................    **$1,071,602.00**

56.  **Part 2: Total vehicles, line 5**    $9,720.00

57.  **Part 3: Total personal and household items, line 15**    $3,175.00

58.  **Part 4: Total financial assets, line 36**    $168,886.00

59.  **Part 5: Total business-related property, line 45**    $0.00

60.  **Part 6: Total farm- and fishing-related property, line 52**    $0.00

61.  **Part 7: Total other property not listed, line 54**    +    $0.00

62.  **Total personal property.** Add lines 56 through 61...    **$181,781.00**    Copy personal property total    **$181,781.00**

63.  **Total of all property on Schedule A/B.** Add line 55 + line 62    **$1,253,383.00**

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Case 2:16-bk-10155-WB    Doc 27    Filed 01/11/18    Entered 01/11/18 17:40:18    Desc
Main Document    Page 15 of 48

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Stefan Mark Higa** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Emy Okohira** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:16-bk-10155** | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim | **Column C**<br>Unsecured portion<br>If any |
|---|---|---|---|---|---|
| **2.1** | **Chase Home Finance**<br>Creditor's Name | Describe the property that secures the claim: | $100,000.00 | $870,000.00 | $0.00 |

**5129 Lindblade Dr. Culver City, CA 90230  Los Angeles County Residence:**

**1st DOT Due/Late:  1st / 16th**
**2nd DOT Due/Late:   1st/16th**
**3rd DOT: Due/Late:   1st/16th**

P.O. Box 9001871
Louisville, KY
40290-1871

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

Nature of lien. Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)     **2nd DOT**

Date debt was incurred    **2005**    Last 4 digits of account number    **7448**

| | | | | | |
|---|---|---|---|---|---|
| **2.2** | **Ditech Financial**<br>Creditor's Name | Describe the property that secures the claim: | $30,000.00 | $201,602.00 | $0.00 |

**225 E. Appaloosa Way Willard, UT 84340  Box Elder County Rental Property To be surrendered**

PO Box 6176
Rapid City, SD
57709-6176

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only

Nature of lien. Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)

| Debtor 1 | **Stefan Mark Higa** | | | Case number (if know) | **2:16-bk-10155** | |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |
| Debtor 2 | **Emy Okohira** | | | | | |
| | First Name | Middle Name | Last Name | | | |

☐ At least one of the debtors and another    ☐ Judgment lien from a lawsuit

■ Check if this claim relates to a    ☐ Other (including a right to offset) _____
   community debt

Date debt was incurred    2008    Last 4 digits of account number _____

---

| 2.3 | **Nationstar Mortgage** | | $259,293.00 | $870,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

5129 Lindblade Dr. Culver City, CA
90230  Los Angeles County
Residence:

1st DOT Due/Late:  1st / 16th
2nd DOT Due/Late:  1st/16th
3rd DOT: Due/Late:  1st/16th

**Attn: Bankruptcy
350 Highland Dr.
Lewisville, TX 75067**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

Nature of lien. Check all that apply.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a
   community debt

■ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

■ Other (including a right to offset)    1st DOT

Date debt was incurred    2002    Last 4 digits of account number    6481

---

| 2.4 | **Ocwen Loan Servicing, LLC** | | $126,541.00 | $201,602.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**1661 Worthington Road, Ste. 100
West Palm Beach, FL 33409**

Number, Street, City, State & Zip Code

225 E. Appaloosa Way Willard, UT
84340  Box Elder County
Rental Property
To be surrendered

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

Nature of lien. Check all that apply.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a
   community debt

■ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☐ Other (including a right to offset) _____

Date debt was incurred    2008    Last 4 digits of account number    4139

---

| 2.5 | **Specialized Loan Servicing** | | $100,000.00 | $870,000.00 | $0.00 |
|---|---|---|---|---|---|

Describe the property that secures the claim:

---

| Debtor 1 | **Stefan Mark Higa** | | | Case number (if know) | **2:16-bk-10155** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Emy Okohira** | | | | |
| | First Name | Middle Name | Last Name | | |

Creditor's Name

**8742 Lucent Blvd., Ste. 300**
**Littleton, CO 80129**

Number, Street, City, State & Zip Code

**5129 Lindblade Dr. Culver City, CA 90230  Los Angeles County**
**Residence:**

**1st DOT Due/Late:   1st / 16th**
**2nd DOT Due/Late:  1st/16th**
**3rd DOT: Due/Late:   1st/16th**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **3rd DOT**

Date debt was incurred    **2007**        Last 4 digits of account number    **4634**

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | **$615,834.00** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$615,834.00** |

**Part 2:  List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Name Address
-NONE-

On which line in Part 1 did you enter the creditor?

Last 4 digits of account number

Official Form 106D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 3 of 3

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

EXHIBIT 4

| Creditor: | Specialized Loan Servicing LLC |
|---|---|
| Debtor: | Stefan Mark Higa |
| Case No.: | 16-10155 |
| Loan No.: | |
| Our File No.: | |
| Collateral: | 5129 Landblade Drive, Culver City, CA 90230 |

**PAYMENTS RECEIVED**

| Loan Status as of: | 4/19/2018 |
|---|---|
| Initial Due Date: | 1/15/2016 |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | $ – | 1/15/2016 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| 2/9/2016 | $ 1,011.61 | | | $ – | $ 1,011.61 | Funds Received |
| | $ – | 2/15/2016 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| 3/9/2016 | $ 1,010.39 | | | $ – | $ 1,010.39 | Funds Received |
| | $ – | 3/15/2016 | $ 1,010.39 | $ – | $ (1,010.39) | Payment Accrued |
| 4/14/2016 | $ 1,024.18 | | | $ – | $ 1,024.18 | Funds Received |
| | $ – | 4/15/2016 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 5/15/2016 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| 5/16/2016 | $ 1,011.61 | | | $ – | $ 1,011.61 | Funds Received |
| 6/8/2016 | $ 1,011.61 | | | $ – | $ 1,011.61 | Funds Received |
| | $ – | 6/15/2016 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| 7/11/2016 | $ 1,015.42 | | | $ – | $ 1,015.42 | Funds Received |
| | $ – | 7/15/2016 | $ 1,006.88 | $ – | $ (1,006.88) | Payment Accrued |
| 8/4/2016 | $ 1,010.39 | | | $ – | $ 1,010.39 | Funds Received |
| | $ – | 8/15/2016 | $ 1,010.37 | $ – | $ (1,010.37) | Payment Accrued |
| 9/9/2016 | $ 1,021.42 | | | $ – | $ 1,021.42 | Funds Received |
| | $ – | 9/15/2016 | $ 1,006.97 | $ – | $ (1,006.97) | Payment Accrued |
| 10/10/2016 | $ 1,013.94 | | | $ – | $ 1,013.94 | Funds Received |
| | $ – | 10/15/2016 | $ 998.93 | $ – | $ (998.93) | Payment Accrued |
| | $ – | 11/15/2016 | $ 1,002.06 | $ – | $ (1,002.06) | Payment Accrued |
| | $ – | 12/15/2016 | $ 994.64 | $ – | $ (994.64) | Payment Accrued |
| | $ – | 1/15/2017 | $ 1,000.27 | $ – | $ (1,000.27) | Payment Accrued |
| 1/26/2017 | $ 2,032.70 | | | $ – | $ 2,032.70 | Funds Received |
| | $ – | 2/15/2017 | $ 1,011.32 | $ – | $ (1,011.32) | Payment Accrued |
| | $ – | 3/15/2017 | $ 988.41 | $ – | $ (988.41) | Payment Accrued |
| | $ – | 4/15/2017 | $ 1,005.43 | $ – | $ (1,005.43) | Payment Accrued |
| | $ – | 5/15/2017 | $ 1,009.99 | $ – | $ (1,009.99) | Payment Accrued |
| | $ – | 6/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 7/15/2017 | $ 1,009.99 | $ – | $ (1,009.99) | Payment Accrued |
| | $ – | 8/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 9/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 10/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 11/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 12/15/2017 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 1/15/2018 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 2/15/2018 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| | $ – | 3/15/2018 | $ 1,010.76 | $ – | $ (1,010.76) | Payment Accrued |
| | $ – | 4/15/2018 | $ 1,011.61 | $ – | $ (1,011.61) | Payment Accrued |
| **Total:** | **$ 11,163.27** | | **$ 28,228.95** | **$ -** | **$ (17,065.68)** | |

| Delinquent Payments | | Days Delinquent: | 490 | |
|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Stip Due | Total Due |
| 12/15/2016 | $ 994.64 | $ – | $ – | $ 994.64 |
| 1/15/2017 | $ 1,000.27 | $ – | $ – | $ 1,000.27 |
| 2/15/2017 | $ 1,011.32 | $ – | $ – | $ 1,011.32 |
| 3/15/2017 | $ 988.41 | $ – | $ – | $ 988.41 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/15/2017 | $ | 1,005.43 | $ | – | $ | – | $ | 1,005.43 |
| 5/15/2017 | $ | 1,009.99 | $ | – | $ | – | $ | 1,009.99 |
| 6/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 7/15/2017 | $ | 1,009.99 | $ | – | $ | – | $ | 1,009.99 |
| 8/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 9/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 10/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 11/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 12/15/2017 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 1/15/2018 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 2/15/2018 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| 3/15/2018 | $ | 1,010.76 | $ | – | $ | – | $ | 1,010.76 |
| 4/15/2018 | $ | 1,011.61 | $ | – | $ | – | $ | 1,011.61 |
| Delinquency | | | | | | $ | 17,135.30 |
| Less Suspense | | | | | | $ | 69.62 |
| Total Delinquency | | | | | | $ | 17,065.68 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**3200 E. Guasti Road, Suite 100, Ontario, CA 91761**


A true and correct copy of the foregoing document entitled as **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/30/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*U.S. Trustee (LA)*
ustpregion16.la.ecf@usdoj.gov

*Trustee*
Nancy K. Curry
trustee13la@aol.com

*Debtors' Attorney*
Nicholas M. Wajda
info@wajdalawgroup.com

☒    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) 04/30/2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*U.S. Bankruptcy Court Judge*
Honorable Julia W. Brand
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

*Debtor*
Stefan Mark Higa
5129 Lindblade Drive
Culver City, CA 90230

Joint Debtor
Emy  Okohira
5129 Lindblade Drive
Culver City, CA 90230

☒    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 04/30/2018 | Priscilla Ramirez | /s/ Priscilla Ramirez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PrfSrv_CAC_X02                                                                                                          4125-N-4838
This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                          Page 12                          **F 4001-1.RFS.RP.MOTION**

| In re: | (Short Title) | Chapter: 13 |
| | **Stefan Mark Higa and Emy Okohira** *fka* **Emy Okohira-Higa** | Case No.   **2:16-bk-10155-WB** |
| | Debtor(s). | |

## SERVICE PAGE CONTINUATION

Attorneys for Creditor: Bank of America, N.A.:
**Merdaud Jafarnia:** bknotice@mccarthyholthus.com

Courtesy NEF:
**Edward A Treder:** cdcaecf@bdfgroup.com

Attorney for Creditor JPMorgan Chase Bank, N.A.,:
**Merdaud Jafarnia:** bknotice@mccarthyholthus.com

Attorney for Creditor Nationstar Mortgage LLC:
**Brandye N Foreman:** cdcaecf@bdfgroup.com

Attorney for Creditor Real Time Solutions, Inc.:
**Rose M Velasquez:** bankruptcy@rtresolutions.com

Attorney for Creditor U.S. Bank National Association:
**April Harriott:** bkyecf@rasflaw.com

Creditor:
**BANK OF AMERICA, N.A.**
c/o McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101

Creditor:
**JPMorgan Chase Bank, N.A.,**
c/o McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101

Attorney for Creditor Nationstar Mortgage LLC:
**Melissa A Vermillion**
Prober & Raphael
20750 Ventura Blvd Ste 100
Woodland Hills, CA 91364

Creditor:
**Real Time Resolutions, Inc.**
1349 Empire Central Dr., Suite 150
Dallas, TX 75247